# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| ERIC STEVENS | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:15-CV-934 (JCH) |
| | : | |
| v. | : | |
| | : | |
| DANNEL MALLOY et al., | : | JUNE 7, 2016 |
| Defendants. | : | |

## RULING RE: DEFENDANTS' MOTIONS TO DISMISS (DOC. NOS. 21, 22, 24 & 27)

## I.    INTRODUCTION

This is an action filed by plaintiff Eric Stevens ("Mr. Stevens") against

Connecticut Governor Dannel Malloy ("Governor Malloy"), Connecticut Supreme Court

Justice Chase T. Rogers ("Chief Justice Rogers"), Attorney Mary Bergamini ("Attorney

Bergamini"), Tiffany Khalily[1] ("Tiffany"),[2] Edward Khalily ("Edward"), Shahram[3] Rabbani

("Shahram"), Diana Rabbani ("Diana"), and police officer Scott Segar ("Officer Segar").

Mr. Stevens's Complaint alleges that various unconstitutional, illegal, and tortious acts

by these defendants individually and in concert have resulted in the destruction of his

relationship with his minor daughter, whom he has not seen in four years and has not

---

[1] Although defendants Tiffany and Edward Khalily's last name is spelled "Kahlily" in the Complaint, see Compl. at 3 ¶ 11 (Doc. No. 1), the defendants have made clear that their last name is properly spelled "Khalily," see Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 1 n.1 (Doc. No. 24-1). The court will use the correct spelling of the defendants' last name in this Ruling.

[2] Because multiple sets of defendants share a last name, the court will respectfully refer to these defendants by their first names to avoid confusion.

[3] At various points in the parties' filings, defendant Shahram Rabbani's name is spelled "Shahram," see Compl. at 3 ¶ 9 (Doc. No. 1); Defs.' Sharam and Diana Rabbani's Mot. to Dismiss at 1 (Doc. No. 27), and "Sharam," see Defs.' Sharam and Diana Rabbani's Mot. to Dismiss at 1 (Doc. No. 27). Because it is not clear which spelling is correct, the court will use "Shahram," the spelling used in the Complaint.

spoken to in 18 months.  See Compl. at 1 ¶ 1, 8 ¶ 30 (Doc. No. 1).  Mr. Stevens seeks

declaratory and injunctive relief, as well as damages.  See id. at 14.

Seven of the defendants[4] have filed Motions to Dismiss that are now pending

before the court.  See Att'y Bergamini's Mot. to Dismiss (Doc. No. 21); State Defs.' Mot.

to Dismiss (Doc. No. 22); Defs.' Mot. to Dismiss (Doc. No. 24); Defs.' Sharam and

Diana Rabbani's Mot. to Dismiss (Doc. No. 27).  Mr. Stevens filed a single Opposition to

all of the pending Motions.  See Pl.'s Mem. in Opp. to the Defs.' Various Mots. to

Dismiss ("Pl.'s Opp.") (Doc. No. 33).  The defendants filed timely Replies.  See Reply

Mem. of Law in Supp. of the State Defs.' Mot. to Dismiss (Doc. No. 38); Att'y

Bergamini's Reply to Stevens' Opp. to the Defs.' Various Mots. to Dismiss (Doc. No.

39); Defs.' Sharam and Diana Rabbani's Reply to Eric Stevens's Objection to Their Mot.

to Dismiss (Doc. No. 41); Defs.' Reply to Pl.'s Opp. to the Defs.' Various Mots. to

Dismiss (Doc. No. 42).

For the reasons that follow, the court concludes that Mr. Stevens lacks standing

to pursue his claims against defendants Governor Malloy and Chief Justice Rogers, and

therefore **GRANTS** their Motion to Dismiss (Doc. No. 22).  The court also concludes

that Mr. Stevens's claims against defendant Officer Segar should be dismissed without

prejudice because Mr. Stevens failed to effect proper service on Officer Segar as

required by the Federal Rules of Civil Procedure.  Mr. Stevens's claims against the

remaining defendants are state claims and, in the absence of a remaining source of

federal jurisdiction, the court declines to exercise supplemental jurisdiction over these

claims.  Therefore, the court directs that Mr. Stevens's remaining claims be dismissed

---

[4] Officer Segar is the sole defendant who has not moved to dismiss the Complaint.

without prejudice and **TERMINATES AS MOOT** the pending Motions to Dismiss filed by these defendants.

## II.    FACTS[5]

Plaintiff Eric Stevens was formerly married to defendant Tiffany Khalily.  The couple had one child together, a daughter.  See Compl. at 4 ¶ 16 (Doc. No. 1).  Mr. Stevens filed for divorce in 2009.  See id. at 3 ¶ 13.  In 2011, the couple's divorce was finalized by agreement and after an uncontested hearing.  See id. at 6 ¶ 20.  As part of the divorce, Mr. Stevens and Tiffany agreed that Tiffany would have full custody of the couple's daughter, with Mr. Stevens to receive visitation.  See id.  After the divorce was finalized, Mr. Stevens and Tiffany remained embroiled in post-judgment litigation.  See id. at 6 ¶ 21, 7 ¶ 22.

In 2012, nearly a year after their divorce was finalized, Tiffany allegedly offered an acquaintance $5,000 to kill Mr. Stevens.  See id. at 7 ¶ 23.  Tiffany was arrested and charged with attempt to commit murder.  See id.  During the pendency of her criminal case, Tiffany maintained custody of the couple's minor child.  See id. at 7 ¶ 26.  She was also able to relocate to New York State.  See id.  Mr. Stevens has not seen his daughter for nearly four years, and has not spoken to her in 18 months.  See id. at 8 ¶ 30.  During the period in which Mr. Stevens has been separated from his daughter, he has filed many motions in state court "seeking custody of his daughter, visitation with his daughter, findings of contempt against Tiffany Stevens and her counsel, and other

_____

[5] For purposes of this Ruling on defendants' Motions to Dismiss, the court accepts as true all well-pled facts alleged in the Complaint and draws all reasonable inferences in Mr. Stevens's favor.  See Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).  The court accordingly derives the following description of the facts of this case from the Complaint.  The facts described herein are limited to those necessary to decide the pending Motions.

relief." Id. at 10 ¶ 37.  The state court failed timely to adjudicate Motions filed by Mr. Stevens, who appeared pro se, but did consider and rule on Motions filed by Tiffany's counsel.  See id. at 11 ¶ 39.

After Tiffany allegedly tried to have Mr. Stevens killed, a state court ordered her not to have any contact with Mr. Stevens.  See id. at 7 ¶ 24.  Notwithstanding that order of no contact, Tiffany continued to contact Mr. Stevens by telephone and text message to threaten and terrorize him.  See id.  Mr. Stevens reported Tiffany's efforts to communicate with him to defendant Officer Segar, a police officer employed by the Town of Simsbury.  See id. at 3 ¶ 12, 13 ¶ 54.  Officer Segar did not arrest Tiffany, despite having probable cause to believe Tiffany was violating the state court order of no contact.  See id.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).  Where jurisdictional facts are in dispute, the court has the power to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.  See id.  The burden is on the plaintiff to establish jurisdiction.  Renne v. Geary, 501 U.S. 312, 316 (1991); see also Tandon, 752 F.3d at 243 (noting that "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists" (internal quotations and citation omitted)).

4

A motion to dismiss pursuant to Rule 12(b)(1) is "the proper procedural route" to bring a challenge to a plaintiff's Article III standing to adjudicate a claim.  <u>Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.</u>, 436 F.3d 82, 88 n.6 (2d Cir. 2006).

B.    <u>Rule 4</u>

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, an individual may properly be served either by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or by doing any of the following: "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e).

Connecticut law provides that "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state."  C.G.S.A. § 52-57(a).

When a plaintiff fails to effect proper service upon a defendant and the defendant does not waive service of process pursuant to Rule 4(d), the plaintiff's lawsuit may be subject to dismissal pursuant to Rule 12(b)(5).  "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient."  <u>Khan v. Khan</u>, 360 F. App'x 202, 203 (2d Cir. 2010).  Even if a defendant does not move for dismissal pursuant to Rule 12(b)(5), the court may <u>sua</u> <u>sponte</u> dismiss claims against a defendant

"after notice to the plaintiff" if it appears that the defendant was not timely and properly served.  Fed. R. Civ. P. 4(m).

## IV.    DISCUSSION

Mr. Stevens brings claims against defendants Governor Malloy, Chief Justice Rogers, and Officer Segar under section 1983 of title 42 of the United States Code for violations of his rights under the United States Constitution.  See Compl. at 1 ¶ 2, 2 ¶ 3 (Doc. No. 1).  Mr. Stevens also brings supplemental state law claims against the other defendants, who are all non-state actors.  See id. at 1 ¶ 2; see also Pl.'s Opp. at 2 (Doc. No. 33) (characterizing Mr. Stevens's claims against Governor Malloy and Chief Justice Rogers as the only federal claims in this action and stating that if the claims against these defendants were dismissed, "state law claims only" would remain).  In the following Discussion, the court concludes that (1) Mr. Stevens lacks standing to pursue his claims against Governor Malloy and Chief Justice Rogers, and (2) Mr. Stevens's claims against Officer Segar should be dismissed for failure to effect proper service under the Federal Rules of Civil Procedure.  Therefore, the court dismisses the claims against these three defendants pursuant to Rules 12(b)(1) and 4(m) of the Federal Rules.

The dismissal of Mr. Stevens's claims against these three defendants means that "state law claims only [remain] in this action."  Pl.'s Opp. at 2 (Doc. No. 33).  The court declines to exercise supplemental jurisdiction over these claims, see 28 U.S.C. § 1367(c)(3), and therefore orders that Mr. Stevens's remaining claims be dismissed without prejudice to refile in state court.

A.      Rule 12(b)(1)

Governor Malloy and Chief Justice Rogers move to dismiss all of the claims

against them on the ground that Mr. Stevens lacks standing to pursue this action.  See

Mem. of Law in Supp. of State Defs.' Mot. to Dismiss at 7 ("Malloy & Rogers MTD

Mem.") (Doc. No. 22-1).  Mr. Stevens responds that "[n]othing could be further from the

truth," because he "suffers immanent [sic] future injury daily, as his relationship with his

minor daughter withers and dies."  Pl.'s Opp. at 15, 17 (Doc. No. 33).  For the reasons

that follow, the court agrees with the defendants that Mr. Stevens lacks standing to

pursue his claims against Governor Malloy and Chief Justice Rogers.  As a result, the

claims against Governor Malloy and Chief Justice Rogers must be dismissed pursuant

to Rule 12(b)(1).

Article III of the United States Constitution provides that the jurisdiction of federal

courts is limited to certain "cases" and "controversies."  U.S. Const. art. III § 2.  "One

element of the case-or-controversy requirement is that plaintiffs must establish that they

have standing to sue."  Clapper v. Amnesty Intern. USA, 133 S. Ct. 1138, 1146 (2013)

(internal quotations and citation omitted).  "To establish Article III standing, a plaintiff

must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury

and the conduct complained of,' and (3) a 'likel[ihood]' that the injury will be 'redressed

by a favorable decision.'"  Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341

(2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  The

ultimate purpose of the standing requirement is to mandate that plaintiffs "demonstrate

a personal stake in the outcome in order to assure that concrete adverseness which

sharpens the presentation of issues necessary for the proper resolution of" important

questions.  City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (internal quotations and citation omitted).

Although Mr. Stevens's Complaint is somewhat unclear on the exact nature of the injuries for which he claims Governor Malloy and Chief Justice Rogers are liable, a generous reading of his Complaint suggests that he alleges three different injuries.  The first, and primary, injury alleged by Mr. Stevens is the loss of a relationship with his child.  See Compl. at 1 ¶ 2 (Doc. No. 1) ("The plaintiff brings claims alleging . . . denial of rights of familial association . . . [and] denial of his fundamental right to parent his child . . . ."); see also Pl.'s Opp. at 16-17 (Doc. No. 33) (stating that "plaintiff contends that he lost his child" as a result of the actions of Governor Malloy and Chief Justice Rogers, and that "[plaintiff] suffers immanent [sic] future injury daily, as his relationship with his minor daughter withers and dies").  Mr. Stevens locates a right to a relationship with his child in myriad constitutional provisions, including the First Amendment and the Ninth Amendment.  See Compl. at 1 ¶ 2 (Doc. No. 1).  Second, Mr. Stevens alleges that he was injured by the fact that he did not receive court-appointed counsel in the state court divorce and custody proceedings despite the fact that he could not afford to retain counsel on his own.  See id. at 12 ¶ 48.  Mr. Stevens claims that Governor Malloy's and Chief Justice Rogers's failure to provide funds for court-appointed counsel for indigent family court litigants like Mr. Stevens resulted in "a denial of [his] right to equal protect[ion] and to substantive due process" as guaranteed by the Fourteenth Amendment.  Id.  Finally, Mr. Stevens alleges that he was injured by the failure of Chief Justice Rogers adequately to train the Connecticut Superior Court judge who presided over Mr. Stevens's divorce and custody dispute to "hear or rule upon [his] motions," filed

as a pro se litigant.  Id. at 11 ¶ 39.  Mr. Stevens contends that the state court judge's

failure to act on the motions of pro se litigants like Mr. Stevens constitutes a denial of

Mr. Stevens's "right to petition for the redress of grievances," as well as his right of

"access to the Courts," both guaranteed by the First Amendment.  Id. at 11 ¶ 41.  Mr.

Stevens contends that Chief Justice Rogers is responsible for these deprivations of his

constitutional rights because she is "deliberately indifferent in her failure to train judges

on their responsibility to adjudicate all motions filed in the Superior Court in a prompt

and timely manner, including motions filed by pro se litigants."  Id. at 13 ¶ 53.

Although the latter two of these alleged injuries are, in some respects, part of the

first injury—i.e., the fact that Mr. Stevens did not receive court-appointed counsel and

the alleged failure of the state court judge to act on Mr. Stevens's Motions are part of

Mr. Stevens's theory of why Governor Malloy and Chief Justice Rogers are liable for the

loss of a relationship with his daughter—the latter two injuries are also, at least in

theory, independently actionable.  For example, if Mr. Stevens proved that he was

constitutionally entitled to court-appointed counsel in his state court custody

proceedings, the deprivation of that right could entitle him to damages regardless of

whether his claim for his primary injury of deprivation of a relationship with his daughter

was also successful.  Thus, the court must separately assess Mr. Stevens's standing to

assert claims related to each of the three injuries described above.  In the interest of

clarity and avoiding undue repetition of analysis, however, the court will organize the

discussion of Mr. Stevens's standing to assert his claims not by injury, but by remedy.

See Friends of the Earth, Inc. v. Laidlaw Environmental Serv., Inc., 528 U.S. 167, 185

(2000) ("[A] plaintiff must demonstrate standing separately for each form of relief

sought.").  Mr. Stevens's Complaint requests both equitable relief and damages.  See Compl. at 14 (Doc. No. 1).  The court will consider Mr. Stevens's standing to pursue equitable relief first, followed by his standing to pursue money damages.

        1.    Equitable Relief

Mr. Stevens's Complaint seeks two kinds of equitable relief:  declaratory relief and injunctive relief.  In particular, Mr. Stevens asks for "[d]eclaratory relief in the form of a ruling requiring that Connecticut's failure to provide counsel to indigent family court litigants violates both the First and Fourteenth Amendments," as well as "[i]njunctive relief in the form of an order requiring the Chief Justice to create, enforce and monitor a policy requiring family court judges promptly to adjudicate pro se motions."  Compl. at 14 (Doc. No. 1).  Because these equitable remedies are prospective in nature and Mr. Stevens has failed to allege facts sufficient to establish a likelihood of future injury, Mr. Stevens lacks standing to pursue the equitable relief he seeks.

The conclusion that Mr. Stevens lacks standing to pursue equitable relief in this case primarily flows from the undisputed fact that, the day before the Complaint in this case was filed, a Connecticut Superior Court judge dismissed Mr. Stevens's state court case on the grounds that Connecticut lacks jurisdiction over the determination of custody of Mr. Stevens's minor child under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).  See Stevens v. Stevens, No. FA094044372S, 2015 WL 4173563 at *4 (Conn. Super. Ct. June 17, 2015).  The state court judge reached this conclusion because "Connecticut is no longer the home state of the child; a parent living in Connecticut no longer has a significant relationship with the child; and substantial evidence regarding the child's care, protection, training and personal relationships is no

longer available in Connecticut." <u>Id.</u>  Because the state court judge determined that

New York, not Connecticut, is the proper jurisdiction for resolution of further questions

regarding the custody and care of Stevens's minor child, the Connecticut court

dismissed all pending Motions without prejudice and directed Stevens's ex-wife to "file

the divorce decree and separation agreement in the State of New York."  <u>Id.</u>  Mr.

Stevens did not appeal the Connecticut court's jurisdictional determination, and he

agrees with Governor Malloy and Chief Justice Rogers that Connecticut state courts no

longer have jurisdiction over his custody case.  <u>See</u> Pl.'s Opp. at 16 n.3 (Doc. No. 33)

("[The] Connecticut court relinquished jurisdiction over the matter to the New York

Courts in a ruling issued after this complaint was filed.[6]  The plaintiff did not take an

appeal of that order, and, upon information and belief, the New York courts now have

jurisdiction over the matter."); <u>see also</u> Malloy & Rogers MTD Mem. at 8 (Doc. No. 22-1)

("The Superior Court has held that it lacks jurisdiction over further custody proceedings

between the plaintiff and Ms. Khalily because of Ms. Khalily's relocation to New York.").

Because Mr. Stevens's divorce and custody case in Connecticut state court has

concluded, the injuries that he alleges in his Complaint are necessarily in the past and

not ongoing.[7]  Mr. Stevens's requests for prospective declaratory and injunctive relief

---

[6] Although Mr. Stevens states several times that the Connecticut Superior Court issued its Ruling after the initiation of this lawsuit, <u>see, e.g.</u>, Pl.'s Opp. at 2 ("The factual context of the litigation has changed since the action was filed, with the Connecticut courts now having ceded jurisdiction of the underlying custodial conflict to the New York courts . . . ."), that does not appear to be true.  The Connecticut Superior Court's Ruling is dated June 17, 2015.  <u>See</u> <u>Stevens</u>, 2015 WL 4173563 at *1.  In contrast, the docket entry for Mr. Stevens's Complaint reflects that, although Mr. Stevens's Complaint is <u>dated</u> June 17, 2015, <u>see</u> Compl. at 1 (Doc. No. 1), that document was actually <u>filed</u> on June 18, 2015.  Thus, the Connecticut Superior Court had determined that it did not have jurisdiction over Mr. Stevens's minor child prior to the initiation of this lawsuit.

[7] Mr. Stevens's Complaint contains no allegations that could plausibly be read to articulate an alternative theory of future injury for any of the claims he raises.  <u>See</u> Compl. (Doc. No. 1).  To give but one example of the kinds of future injury allegations that are absent from Mr. Stevens's Complaint, Mr.

are predicated on these past injuries.  See Compl. at 14 (Doc. No. 1) (stating that the sought declaratory relief is a ruling that "Connecticut's failure to provide counsel to indigent family court litigants violates both the First and the Fourteenth Amendments," and that the sought injunctive relief is "an order requiring the Chief Justice to create, enforce and monitor a policy requiring family court judges promptly to adjudicate pro se motions").  But the combination of a past injury paired with a request for prospective equitable relief is precisely the situation the Supreme Court found insufficient for Article III standing purposes in the seminal case of City of Los Angeles v. Lyons, 461 U.S. 95 (1983).

In Lyons, a man who had been placed in a chokehold by Los Angeles police officers sought to contest police officers' use of such tactics by "fil[ing] a complaint for damages, injunction, and declaratory relief."  Id. at 97.  The Supreme Court held that Lyons's standing to seek prospective relief "depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers."  Id. at 105.  Because the Supreme Court concluded that Lyons's assertion that he could be placed in a chokehold again at some point in the future was "speculat[ive]," id. at 108, the Court determined that "Lyons'[s] assertion that he may again be subject to an illegal chokehold does not create the actual controversy that must exist for a declaratory judgment to be entered," id. at 104.  In sum, the Lyons court concluded that, although Lyons's past injury of being subject to a chokehold "supplied a predicate for compensatory damages, it did not . . . supply one for prospective equitable relief since the fact that such practices had been

---

Stevens does not allege that he is currently, or imminently will be, embroiled in another custody battle in Connecticut related to a different minor child for which he will be unable to retain private counsel and, as a result, will be forced to proceed in that action pro se.

used in the past did not translate into a real and immediate threat of future injury to

Lyons." Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004).

The facts and holding of Lyons are apposite to the present case. Like the plaintiff

in Lyons, Mr. Stevens's failure to plead facts sufficient to constitute a "real and

immediate threat of future injury," id., means that Mr. Stevens lacks standing to pursue

the prospective declaratory and injunctive relief requested in his Complaint.

Relatedly, Mr. Stevens also lacks standing to pursue the specific equitable relief

he seeks because a favorable Ruling from this court is highly unlikely to redress his

claimed injuries. See Clapper, 133 S. Ct. at 1147 (noting that an essential element of

Article III standing is that the asserted injury must be "redressable by a favorable ruling"

(quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139 (2010)). Were this court

to issue the declaratory judgment and injunction Mr. Stevens requests, that Ruling

would neither remedy the past harm[8] that Mr. Stevens alleges he has suffered, nor

rectify the "immanent [sic] future injury" Mr. Stevens claims he suffers "daily, as his

relationship with his minor daughter withers and dies." Pl.'s Opp. at 17 (Doc. No. 33).

This is because, as noted above, a Connecticut state court has determined that New

York has jurisdiction over matters involving Mr. Stevens's minor child.[9] See Stevens,

2015 WL 4173563 at *4. If Mr. Stevens wishes to alter the current custody arrangement

or otherwise vindicate his right to a relationship with his child, he will have to do so in

New York, which means that prospective equitable relief related to the rights of pro se

---

[8] The proper remedy for the past harm suffered by Mr. Stevens would be damages, which are discussed infra.

[9] Again, the court notes that Mr. Stevens concedes he "did not take an appeal" of the Connecticut Superior Court's jurisdictional determination, and therefore agrees that "the New York courts now have jurisdiction over the matter." Pl.'s Opp. at 16 n.3 (Doc. No. 33).

family court litigants in Connecticut would not help him.  Because prospective equitable

relief would not redress Mr. Stevens's injuries, he lacks standing under Article III of the

United States Constitution to pursue declaratory and injunctive relief for his claims.  See

Susan B. Anthony List, 134 S. Ct. at 2341-42 (noting that "[t]he party invoking federal

jurisdiction" must establish a likelihood that the claimed "injury will be redressed by a

favorable decision" for there to be Article III standing (internal quotations and citations

omitted)).  Mr. Stevens's claims for declaratory and injunctive relief are therefore

dismissed pursuant to Rule 12(b)(1).

> ### 2.    Damages

Having determined that Mr. Stevens lacks standing to pursue declaratory and

injunctive relief for the injuries alleged in his Complaint, the court now turns to the

question of whether Mr. Stevens has standing to pursue damages.  As noted above, a

broad reading of Mr. Stevens's Complaint suggests that Mr. Stevens has alleged three

injuries:  (1) loss of a relationship with his daughter; (2) deprivation of court-appointed

counsel in his divorce and custody case; and (3) deprivation of prompt and fair

consideration of motions he filed pro se in that case.  The court will consider whether

Mr. Stevens has adequately pled an injury-in-fact, causation, and redressability for each

of these claimed injuries.  For purposes of this analysis, the court continues to "take all

uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in

favor of the party asserting jurisdiction," Tandon, 752 F.3d at 243, while still

remembering that Mr. Stevens carries the burden of establishing jurisdiction, see Susan

B. Anthony List, 134 S. Ct. at 2342.

a.   Loss of Relationship

As noted in an earlier section, the primary injury Mr. Stevens asserts in his Complaint is loss of a relationship with his daughter.  See Compl. at 13 ¶ 55 (Doc. No. 1) ("As a direct and proximate result of the acts and omissions herein, the plaintiff has suffered . . . the loss of any relationship with his daughter . . . ."); see also Pl.'s Opp. at 17 (Doc. No. 33) (stating that Mr. Stevens "suffers immanent [sic] future injury daily, as his relationship with his minor daughter withers and dies").  Mr. Stevens locates a right to a relationship with his daughter in the First and Ninth Amendments of the United States Constitution, which Mr. Stevens alleges guarantee a right to familial association and a right to parent his child, respectively.  See Compl. at 1 ¶ 2 (Doc. No. 1).  To ascertain whether Mr. Stevens has standing to pursue a claim for damages against Governor Malloy and Chief Justice Rogers, the court must determine whether this is (1) a cognizable injury-in-fact that is (2) "fairly traceable to the challenged action" by these defendants, and (3) "redressable by a favorable ruling."  Clapper, 133 S. Ct. at 1147 (internal quotations and citation omitted).  If Mr. Stevens fails to meet his burden with respect to any one of these elements, he does not have standing to pursue redress for his alleged injury, and his claim for damages must be dismissed.

The court concludes that, for the preliminary purpose of ascertaining whether Mr. Stevens has Article III standing, Mr. Stevens's Complaint articulates a potentially cognizable injury-in-fact that could be redressed by a favorable Ruling from this court. With respect to Mr. Stevens's alleged injury-in-fact, although there is considerable "ambiguity [about] the right to intimate association," including unresolved questions about the exact "nature and the extent of the right," as well as the "the source of the

intimate association right," Matusick v. Erie County Water Authority, 757 F.3d 31, 61 (2d Cir. 2014) (internal quotations and citation omitted), case law in this Circuit suggests that the United States Constitution may protect a father's relationship with his daughter from unwarranted state intrusion, see Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City University of New York, 502 F.3d 136, 143 (2d Cir. 2007) ("The right to intimate association protects the close ties between individuals from inappropriate interference by the power of the state."); Patel v. Searles, 305 F.3d 130, 136 (2d Cir. 2002) (stating that "[t]he husband/wife and parent/child relationships are obviously among the most intimate" and therefore "warrant the highest level of constitutional protection"); Adler v. Pataki, 185 F.3d 35, 42 (2d Cir. 1999) (noting that "[t]he Supreme Court has recognized . . . an individual's right to associate with others in intimate relationships"). Thus, Mr. Stevens's allegation that state actors unduly deprived him of a relationship with his daughter is a cognizable injury-in-fact for standing purposes. It is equally apparent that Mr. Stevens's alleged injury could be redressed by a favorable Ruling on his request for damages. See 42 U.S.C. § 1983; see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971) (noting that the award of damages is "a particular remedial mechanism normally available in the federal courts"); Patel, 305 F.3d at 133 (affirming district court's denial of a motion by the defendants for judgment on the pleadings in a case where the plaintiff sought "compensatory and punitive damages for alleged violations of his constitutional right to intimate association").

The only question remaining with respect to Mr. Stevens's standing to pursue his claim of deprivation of his constitutional right to familial association, then, is whether the injury he alleges is "fairly traceable to the defendant[s'] allegedly unlawful conduct."

Allen v. Wright, 468 U.S. 737, 751 (1984), abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014). The court concludes that it is not. Because "the line of causation between the illegal conduct and injury [is] too attenuated" to support standing, id. at 752, Mr. Stevens's claim for damages must be dismissed.

Mr. Stevens's theory of liability with respect to Governor Malloy and Chief Justice Rogers is a theory of deliberate indifference. He alleges that both Governor Malloy and Chief Justice Rogers are "aware of the controversial role of finances in family cases as a result of broad public criticism by aggrieved litigants," Compl. at 11 ¶ 42 (Doc. No. 1) (Chief Justice Rogers), 12 ¶ 45 (Governor Malloy), and that both defendants have nonetheless "refus[ed] . . . to make funds available for the retention of counsel for family court litigants seeking to vindicate their fundamental interests in familial association," id. at 12 ¶ 48. Separately, Mr. Stevens claims that Chief Justice Rogers is "deliberately indifferent in her failure to train judges on their responsibility to adjudicate all motions filed in the Superior Court in a prompt and timely manner, including motions filed by pro se litigants," id. at 13 ¶ 53, despite the fact that she "is aware of the fact that family court pro se litigants often file motions that the trial court either refuses to calendar for adjudication or otherwise ignores," id. at 12 ¶ 49.

Even assuming arguendo that a deliberate indifference theory of state action and liability is available in this context, Mr. Stevens has failed to plead facts sufficient to allege that his subsequent deprivation of a relationship with his daughter is "fairly traceable" to the inaction of Governor Malloy and Chief Justice Rogers outlined above. Allen, 468 U.S. at 751. This is because, "[f]rom the perspective of the [defendants,] the

17

injury to [the plaintiff] is highly indirect and 'results from the independent action of some third party.'" Id. at 757 (quoting Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 42 (1976)). In other words, the fact that Mr. Stevens has not seen his daughter in four years and has not spoken to her in 18 months, as tragic as that may be, is only indirectly related to the alleged inaction of Governor Malloy and Chief Justice Rogers.

Mr. Stevens's Complaint makes clear that he believes the parties directly responsible for the loss of his relationship with his daughter are his ex-wife and her family. In this regard, the court notes that Mr. Stevens has asserted that the initial divorce and custody proceedings with his ex-wife were "resolved by agreement and a judgment of dissolution of marriage entered after an uncontested hearing on September 6, 2011." Compl. at 6 ¶ 20 (Doc. No. 1). Mr. Stevens further acknowledges that "the agreement gave full custody of [the minor child] to Tiffany Khalily, although the plaintiff was permitted visitation with [the minor child]." Id. Given that Mr. Stevens asserts that he has not seen his daughter in four years, see id. at 8 ¶ 30, Mr. Stevens appears not ever to have exercised his visitation rights pursuant to the consent dissolution of marriage decree.[10] Drawing all reasonable inferences in Mr. Stevens's favor, the court assumes that Mr. Stevens did not visit with his daughter because his efforts to exercise his rights under the consent dissolution of marriage decree were rebuffed. If that is indeed the case, the party or parties directly responsible would be Mr. Stevens's ex-wife and her family members. In fact, Mr. Stevens alleges as much directly in the Complaint.

---

[10] According to Mr. Stevens, the consent dissolution of marriage degree was entered on September 6, 2011. See Compl. at 6 ¶ 20 (Doc. No. 1). His Complaint in this lawsuit was filed on June 18, 2015. See id. Because less than four years passed between the entry of the consent decree and the initiation of this lawsuit, Mr. Stevens's contention that he "has not seen his daughter in almost four years," id. at 8 ¶ 30, necessarily means that he either did not or could not exercise his visitation rights pursuant to the consent dissolution of marriage decree.

See id. at 7 ¶ 22 ("Despite the judgment [awarding Mr. Stevens visitation,] Tiffany Khalily [and her family members] were determined to prevent the plaintiff from having a relationship with his daughter.").  In contrast, the manner in which the acts and omissions of Governor Malloy and Chief Justice Rogers allegedly contributed to Mr. Stevens's loss of a relationship with his daughter—namely by failing to fund the provision of private counsel to indigent family court litigants and/or failing adequately to train Superior Court judges on their responsibilities with respect to adjudicating Motions filed by pro se litigants—is indirect and highly attenuated.

The attenuated relationship between the defendants' actions and the actual harm alleged by Mr. Stevens's Complaint makes this case very similar to the case of Allen v. Wright, 468 U.S. 737 (1984).  In Allen, "[p]arents of black public school children allege[d] . . . that the Internal Revenue Service (IRS) [had] not adopted sufficient standards and procedures to fulfill its obligation to deny tax-exempt status to racially discriminatory private schools."  Id. at 739.  The plaintiffs in Allen contended that this failure on the part of the IRS "interfere[d] with the ability of their children to receive an education in desegregated public schools."  Id. at 740.  Although the Allen Court acknowledged that "[t]he injury [the plaintiffs] identify—their children's diminished ability to receive an education in a racially integrated school—is, beyond any doubt, not only judicially cognizable, but . . . one of the most serious injuries recognized in our legal system," the Court concluded that the plaintiffs lacked standing to pursue their claim. Id. at 756-57.  This decision was based on the Court's determination that "[t]he links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondents' standing."  Id. at

759.  Importantly, the Court also noted that, although "the relief respondents request might have a substantial effect on the desegregation of public schools," they were not entitled to pursue that relief because "whatever deficiencies exist in the opportunities for desegregated education for respondents' children might not be traceable to IRS violations of law."  Id. at 753 n.19.  In other words, the <u>Allen</u> Court reasoned that, even if the relief the plaintiffs sought in that case could <u>redress</u> their injury, they did not have standing to pursue that relief because they could not establish that the IRS's allegedly illegal actions <u>caused</u> their injury.

The key facts of the present case are very similar to the facts in <u>Allen</u>.  Like the plaintiffs in <u>Allen</u>, Mr. Stevens has alleged an injury that is primarily attributable to the actions of a non-governmental third party.  Equally important, although the relief Mr. Stevens seeks could possibly redress the injury he has suffered, he has not pled sufficient facts from which the court could conclude that the acts and omissions of Governor Malloy and Chief Justice Rogers caused that injury.  In sum, Mr. Stevens has failed to carry his burden of pleading facts sufficient to allege that illegal actions of Governor Malloy and Chief Justice Rogers deprived him of his right to familial association; as a result, Mr. Stevens lacks standing to pursue damages for this claim. Mr. Stevens's claim for damages with respect to this injury is dismissed pursuant to Rule 12(b)(1).

          b.      Failure to Appoint Counsel and to Adjudicate <u>Pro</u> <u>Se</u> Motions

Although Mr. Stevens has failed to prove that the actions of Governor Malloy and Chief Justice Rogers caused Mr. Stevens to lose his relationship with his daughter, Mr. Stevens could still be able to pursue claims for damages against Governor Malloy and

Chief Justice Rogers for allegedly violating his right to court-appointed counsel and his right to have his pro se motions adjudicated in a prompt and fair fashion.  It is to consideration of Mr. Stevens's standing to pursue damages for these alleged constitutional injuries that the court now turns.

The court first addresses Mr. Stevens's contention that he was injured by Chief Justice Rogers's deliberate indifference to her duty "to train judges on their responsibility to adjudicate all motions filed in the Superior Court in a prompt and timely manner, including motions filed by pro se litigants."  Compl. at 13 ¶ 53 (Doc. No. 1). Even assuming arguendo that this claim states a cognizable injury-in-fact that would be redressable by a favorable Ruling,[11] the court concludes that Mr. Stevens lacks standing to pursue this claim because he has not adequately alleged that his injury is "fairly traceable" to the actions of Chief Justice Rogers.  Allen, 468 U.S. at 751.  Mr. Stevens's theory of causation, namely that the state court judge's failure timely to rule on his Motions is attributable to Chief Justice Rogers's "failure to train judges on their responsibility to adjudicate all motions filed in the Superior Court in a prompt and timely manner, including motions filed by pro se litigants," Compl. at 13 ¶ 53 (Doc. No. 1), is pure speculation.  The Supreme Court has made clear that speculation of this kind is insufficient to establish proper causation and Article III standing.  See Simon, 426 U.S. at 44 ("Prior decisions of this Court establish that unadorned speculation will not suffice to invoke the federal judicial power.").  Because Mr. Stevens has failed to plead facts that allege how Chief Justice Rogers's alleged failure generally to train state court

_____

[11] The court is of the view that this alleged injury likely would be redressed by a favorable Ruling, see Bivens, 403 U.S. at 397 (noting that the award of damages is "a particular remedial mechanism normally available in the federal courts"), but the court has serious questions about whether this injury, as pled, is a cognizable injury-in-fact for standing purposes.

judges directly resulted in a particular state court judge depriving Mr. Stevens of his constitutional rights by failing timely to adjudicate Mr. Stevens's Motions, Mr. Stevens's claim for damages in relation to this injury is dismissed pursuant to Rule 12(b)(1).

Finally, the court addresses Mr. Stevens's contention that he was injured by the failure of either Governor Malloy (for the Executive Branch) or Chief Justice Rogers (for the Judicial Branch) to allocate funds for the provision of court-appointed counsel to indigent family court litigants. Without passing judgment on the merits of Mr. Stevens's contention that the federal Constitution affords him the right to court-appointed counsel in custody proceedings,[12] the court concludes that Mr. Stevens's allegations on this point might articulate a cognizable injury-in-fact for standing purposes. Cf. Lassiter v. Dept. of Social Serv. of Durham County, N.C., 452 U.S. 18, 31-32 (1981) (recognizing that the constitutional guarantee of due process may sometimes necessitate the appointment of counsel for parties in proceedings related to the termination of parental rights); Pl.'s Opp. at 14-15 (Doc. No. 33) (stating that "[w]ith the instant litigation, [Mr. Stevens] seeks a good faith basis to extend existing law"). In addition, Mr. Stevens's

---

[12] The court notes that it is somewhat skeptical that Mr. Stevens would succeed on the merits of his claim, i.e., that he would be able to persuade the court that the United States Constitution guarantees indigent family court litigants like Mr. Stevens access to counsel in custody proceedings. In Lassiter v. Dept. of Social Serv. of Durham County, N.C., the Supreme Court noted that, "[t]he pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." 452 U.S. 18, 25 (1981). The Lassiter Court went on to note that this is a presumption, not a rule, see id. at 26-27, but nonetheless concluded that this presumption was strong enough that it would not invariably be rebutted in cases in which the state sought to terminate a parent's parental rights, see id. at 31-32.

Given that there is no constitutional right to court-appointed counsel in cases involving the termination of parental rights, it is hard to imagine that Mr. Stevens would be successful in arguing that there is a constitutional right to court-appointed counsel in custody disputes. However, Mr. Stevens notes that his Complaint is a good faith attempt to extend existing law, see Pl.'s Opp. at 15 (Doc. No. 33), which the court accepts. In any event, the court need not reach the merits of Mr. Stevens's alleged injury—nor grapple fully with the separate, but related, question of whether Mr. Stevens's alleged injury is a cognizable injury-in-fact for standing purposes—because the court concludes that Mr. Stevens lacks standing because he has failed to plead facts sufficient to satisfy the causation element of standing with respect to this alleged injury.

injury (money damages claim) could be redressed by a favorable ruling from this court. See Bivens, 403 U.S. at 397 (noting that the award of damages is "a particular remedial mechanism normally available in the federal courts").  However, for the reasons that follow, the court concludes that Mr. Stevens has failed to plead facts adequate to allege that his injury was caused by the actions or inaction of Governor Malloy or Chief Justice Rogers.  Because his injury is not "fairly traceable" to the actions of the defendants named, Allen, 468 U.S. at 751, Mr. Stevens lacks standing to pursue damages for this injury.

Mr. Stevens argues that Governor Malloy and Chief Justice Rogers caused him to be deprived of his constitutionally-assured right to appointed counsel in a custody case by "refus[ing] . . .  to make funds available for the retention of counsel for family court litigants seeking to vindicate their fundamental interests in familial association." Compl. at 12 ¶ 48 (Doc. No. 1).  However, this statement is "little more than the remote possibility, unsubstantiated by allegations of fact, that [his] situation might have been better had (defendants) acted otherwise."  Simon, 426 U.S. at 44 (quoting Warth v. Seldin, 422 U.S. 490, 507 (1975)).  Completely absent from Mr. Stevens's Complaint are any concrete allegations that make the fact that he did not have counsel in his state court case "fairly traceable" to the actions of Governor Malloy and Chief Justice Rogers. Most notably, Mr. Stevens does not allege that he asked for a lawyer in his state court custody case, let alone that he asked for a lawyer and was denied one specifically because the state court lacked funds to appoint counsel to represent Mr. Stevens.  In fact, even assuming arguendo that Mr. Stevens asked for counsel and had that request denied, his Complaint appears to attribute the denial not to a lack of appropriated funds,

but to the actions of the Connecticut legislature in drafting a public defender statute that "makes no provision for the appointment of counsel in indigent family law proceedings." Compl. at 10 ¶ 35 (Doc. No. 1).  Under this set of circumstances, the court simply cannot say that Mr. Stevens's injury is "fairly traceable" to the actions of Governor Malloy and Chief Justice Rogers.  Because "[s]peculative inferences are necessary to connect [Mr. Stevens's] injury to the challenged actions" of the defendants, and because such inferences are insufficient to establish causation for Article III standing purposes, Simon, 426 U.S. at 45, Mr. Stevens's claim for damages stemming from the fact that he lacked a lawyer in Connecticut state court custody proceedings must be denied pursuant to Rule 12(b)(1).

In sum, the court concludes that Mr. Stevens lacks standing to pursue either equitable relief or damages for any of his claimed injuries against defendants Governor Malloy and Chief Justice Rogers.  All of Mr. Stevens's claims against these two defendants are dismissed pursuant to Rule 12(b)(1).

      B.    <u>Rule 4</u>

As noted at the outset of this Ruling, police officer Scott Segar is the only defendant who has not filed a Motion to Dismiss.  Officer Segar is also the only defendant who has not had an attorney appear on his behalf in this action.  It is possible that Officer Segar's failure to participate in this case to date is attributable to the fact that he does not appear to have been properly served with the Summons for this action after it was initiated.  See Proof of Service at 4 (Doc. No. 13).

The Proof of Service that was returned for Officer Segar indicates that the Summons for Officer Segar was served on "Lt. Sifodaskalakis, who is designated by law

to accept service of process on behalf of . . . [the] Simsbury Police Dept." <u>Id.</u>  Although Officer Segar was a police officer with the Simsbury Police Department at the time of the events giving rise to this lawsuit, <u>see</u> Compl. at 13 ¶ 54 (Doc. No. 1), Officer Segar is sued in his individual capacity, <u>see id.</u> at 3 ¶ 12.  Therefore, Officer Segar should have been served in accordance with the Federal Rules of Civil Procedure governing service of individual defendants.  <u>See</u> Fed. R. Civ. P. 4(e).  The Federal Rules Provide that individuals "may be served in a judicial district of the United States" in accordance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or by "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode . . . ; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."  <u>Id.</u>

Neither the Federal Rules of Civil Procedure nor Connecticut law governing service of process provide for service upon an individual by delivery of the Summons to a person authorized to accept service on behalf of the individual's employer, unless the individual has separately authorized that person to receive service on his behalf or the case concerns the establishment, enforcement, or modification of a child support order. <u>See</u> Fed. R. Civ. P. 4(e)(2)(C); C.G.S.A. § 52-57(a), (f)(2).  Thus, it does not appear that Officer Segar was properly served within 120 days of the filing of Mr. Stevens's Complaint in this matter, as required by the Federal Rules in effect at the time this

25

lawsuit was initiated.[13]  See Fed. R. Civ. P. 4(m).  Because Mr. Stevens filed his Complaint on June 18, 2015, the 120-day window for effecting proper service is long expired.  Thus, on April 22, 2016, the court ordered Mr. Stevens to show cause why his claims against Officer Segar should not be dismissed for failure to properly serve.  See Notice and Order to Show Cause (Doc. No. 48).  In that same filing, the court notified Mr. Stevens that failure to respond to the court's Order to Show Cause by May 6, 2016, could result in the dismissal of Officer Segar from the case.  See id. at 2.  Mr. Stevens failed to respond to the court's Order to Show Cause.

Under Rule 4(m) of the Federal Rules of Civil Procedure, if a plaintiff fails to serve a defendant within the specified time period, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m). As noted above, it appears to the court that Officer Segar was not properly served.  The court has notified Mr. Stevens of the apparent issue with service and given him a chance to explain either (1) why service was, in fact, proper, or (2) why there is good cause for Mr. Stevens's failure to serve Officer Segar within the time period established by the Federal Rules.  See Notice and Order to Show Cause (Doc. No. 48).  Mr. Stevens failed to respond to the court's Notice within the time period provided and, as a result, the court must either dismiss the claims against Officer Segar or order Mr. Stevens to effect service within a specified time.  See Fed. R. Civ. P. 4(m).  Given Mr. Stevens's failure to respond to the court's Notice and Order to Show Cause, as well as the fact that the period for properly serving Officer Segar elapsed more than six months

---

[13] On December 1, 2015, the Federal Rules were amended to require a plaintiff to effect service within 90 days of the filing of the Complaint.  See Fed. R. Civ. P. 4(m).

ago, the court sees no reason to extend the period of time in which Mr. Stevens can properly serve Officer Segar.  Therefore, the court dismisses Mr. Stevens's claims against Officer Segar without prejudice pursuant to Rule 4(m).

    C.    <u>Supplemental Jurisdiction</u>

It is undisputed that the remaining claims in this lawsuit—against defendants Attorney Bergamini, Tiffany Khalily, Edward Khalily, Shahram Rabbani, and Diana Rabbani—are state law claims directed at non-state actors.  <u>See</u> Compl. (Doc. No. 1); <u>see also</u> Pl.'s Opp. at 2 (Doc. No. 33) (noting that, should the court dismiss the "claims against the state actors, Dannel Malloy and Chase Rogers, the Court may well dismiss the federal claims, thus leaving state law claims only in this action").  Pursuant to section 1367 of title 28 of the United States Code, once "the district court has dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over related state law claims.  28 U.S.C. § 1367(c)(3).  The Second Circuit has counseled district courts that "where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  <u>Klein & Co. Futures, Inc. v. Board of Trade of City of New York</u>, 464 F.3d 255, 262 (2d Cir. 2006).

Because this is "the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . point[s] toward declining to exercise jurisdiction over the remaining state-law claims."  <u>Kolari v. New York-Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d Cir. 2006) (quoting <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988)).  There are no countervailing reasons, such as the "investment of significant judicial resources, . . . extraordinary inconvenience[,] or inequity," that warrant the court

retaining jurisdiction over the remaining state law claims instead of dismissing these claims and permitting Mr. Stevens to refile them in state court.  Id. at 123.  Thus, having dismissed all of Mr. Stevens's federal claims, and there being no other basis for federal jurisdiction in this case, the court declines to exercise supplemental jurisdiction over the remaining state law claims.  See 28 U.S.C. § 1367(c)(3).  Mr. Stevens's state law claims against the remaining defendants are dismissed without prejudice.

## V.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 22) filed by defendants Dannel Malloy and Chase Rogers is **GRANTED**.  Mr. Stevens's claims against these defendants are dismissed for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Mr. Stevens's claims against Scott Segar are dismissed pursuant to Rule 4(m) of the Federal Rules.  These actions result in the dismissal of all federal claims from this lawsuit.

The court declines to exercise supplemental jurisdiction over the state law claims that remain, see 28 U.S.C. § 1367(c)(3), and therefore directs that Mr. Stevens's state law claims against the remaining defendants be dismissed without prejudice.  The Motions to Dismiss filed by those defendants are **TERMINATED AS MOOT**.

Because it is not out of the question that Mr. Stevens could remedy some of the aforementioned defects in his pleading in an Amended Complaint, the court grants Mr. Stevens the right to replead.  Any Amended Complaint must be filed within **21 days** of the date of this Ruling.

The Clerk is directed to close this case, with the understanding that the case will be reopened if Mr. Stevens files an Amended Complaint within 21 days.

**SO ORDERED**.

Dated at New Haven, Connecticut this 7th day of June, 2016.

_/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge