# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ERIC STEVENS, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:15-CV-934 (JCH) |
|  | : |  |
| v. | : |  |
|  | : |  |
| DANNEL MALLOY et al., | : | OCTOBER 28, 2016 |
| Defendants. | : |  |

## RULING RE: DEFENDANTS' MOTIONS TO DISMISS (DOC. NOS. 63, 65, 67 & 68)

## I.    INTRODUCTION

This action was first filed in June 2015 by plaintiff Eric Stevens ("Mr. Stevens")

against the following defendants (collectively, "the defendants"): Connecticut Governor

Dannel P. Malloy ("Governor Malloy"), Chief Justice of the Connecticut Supreme Court

Chase T. Rogers ("Chief Justice Rogers"), Attorney Mary Bergamini ("Attorney

Bergamini"), Tiffany Khalily[1] ("Tiffany"),[2] Edward Khalily ("Edward"), Shahram[3] Rabbani

("Shahram"), Diana Rabbani ("Diana"), and police officer Scott Segar ("Officer Segar").

See Compl. ("Original Complaint") (Doc. No. 1) ¶¶ 4–12.  The Original Complaint

_____

[1] Despite the first footnote in the court's First Ruling, First Ruling at 1 n.1, Mr. Stevens continues to spell Tiffany and Edward Khalily's name incorrectly throughout much of his Amended Complaint, see, e.g., Am. Compl. at 1 (Case Caption), ¶¶ 7, 11, 20. The court will use the correct spelling of the defendants' last name—Khalily—throughout this Ruling.

[2] Because multiple sets of defendants share a last name, the court will refer to these defendants by their first names to avoid confusion.

[3] As was the case in the Original Complaint and in the first set of Motions to Dismiss, see First Ruling at 1 n.3, the parties' filings again spell Shahram Rabbani's name inconsistently.  Compare Am. Compl. ¶ 9 ("Shahram"), and The Defs. Sharam and Diana Rabbani's Mot. to Dismiss Pl.'s Am. Compl. (Doc. No. 65) at 1 (spelling name "Shahram" in first sentence), with The Defs. Sharam and Diana Rabbani's Mot. to Dismiss Pl.'s Am. Compl. (Doc. No. 65) at 1 (spelling name "Sharam" in filing title).  It remains unclear which spelling is correct, so the court will identify Mr. Rabbani as "Shahram," as it did in the First Ruling.

alleged that the defendants committed various unconstitutional, illegal, and tortious acts, both individually and collectively, that destroyed Mr. Stevens's relationship with his minor daughter.  See id. ¶ 1.  Mr. Stevens demanded declaratory and injunctive relief, as well as money damages.  See id. at 14.  Seven of the defendants[4] moved to dismiss Mr. Stevens's Original Complaint, and the court granted Governor Malloy's and Chief Justice Rogers's Motion to Dismiss, while also dismissing Mr. Stevens's claims against Officer Segar because he was not properly served.  See Ruling (June 7, 2016) ("First Ruling") (Doc. No. 52) at 2.[5]  The court declined to exercise supplemental jurisdiction over the remaining, state law claims and terminated the remaining motions as moot. See id. at 2–3.

Noting that it was conceivable that Mr. Stevens could remedy the defects in his Original Complaint, the court granted him leave to file an Amended Complaint.  Id. at 28.  Mr. Stevens subsequently filed an Amended Complaint with very minor modifications.  See generally Am. Compl. (Doc. No. 55).  All the allegations against Attorney Bergamini, Tiffany, Edward, Shahram, Diana, and Officer Segar are identical; with respect to his allegations against Governor Malloy and Chief Justice Rogers (the "State Defendants"), Mr. Stevens removed his demand for injunctive relief and made a handful of additions, see Mem. of Law in Opp'n to the Mots. to Dismiss of Defs. Malloy, Rogers, Bergamini, and the Rabbanis ("Opposition") (Doc. No. 75) at 3 (noting the "modest amendments to [the] complaint . . . in paragraphs 36, 37, 40, 42 and 45").

---

[4] Officer Segar is the only defendant who did not file a Motion to Dismiss.

[5] All references to the First Ruling will cite to the page numbers listed in the PDF version of the ruling found at Docket Number 52, rather than to the Westlaw page numbers.

The seven defendants who filed Motions to Dismiss the Original Complaint have now filed Motions to Dismiss the Amended Complaint.  See generally Attorney Bergamini's Mot. to Dismiss (Doc. No. 63); Defs. Sharam and Diana Rabbani's, Mot. to Dismiss Pl.'s Am. Compl. (Doc. No. 65); State Defs.' Mot. to Dismiss Am. Compl. (Doc. No. 67); Defs.' Mot. to Dismiss (Doc. No. 68) (asking court to dismiss claims against Tiffany and Edward).  Those motions are now pending before the court.  Mr. Stevens filed a Memorandum of Law in Opposition to the Motions, see generally Opposition, and the State Defendants timely replied, see Reply Mem. of Law in Supp. of the State Defs.' Mot. to Dismiss Am. Compl. ("Reply") (Doc. No. 76).

For the reasons set forth below, the court again concludes that Mr. Stevens lacks standing to pursue declaratory relief or damages from the State Defendants.  The State Defendants' Motion to Dismiss (Doc. No. 67) is therefore **GRANTED**.  Furthermore, Mr. Stevens has made clear he does not consider Officer Segar to be part of the case, notwithstanding his inclusion in the Amended Complaint.  See Oral Arg., Oct. 14, 2016, Tr. at 28.  The court declines to exercise supplemental jurisdiction over the remaining claims, all of which are state law claims.  It **TERMINATES AS MOOT** the remaining Motions to Dismiss.

## II.    FACTS[6]

### A.    Background

Mr. Stevens and Tiffany were formerly married; they had a daughter together in 2005.  See Am. Compl. ¶ 7.  In May 2009, Mr. Stevens filed for divorce in Connecticut.

---

[6] For the purposes of ruling on the pending Motions to Dismiss, the court accepts as true all well-pled facts in the Amended Complaint, see Carter v. Healthport Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (noting that courts do so when defendants' Rule 12(b)(1) motion is "facial," "based solely on the

Id. ¶ 13.  More than two years later, the divorce proceedings ended, resolved by agreement after an uncontested hearing; the agreement gave Tiffany sole custody of the couple's daughter and afforded Mr. Stevens visitation rights.  See id. ¶ 20.  The couple remained in extensive post-judgment litigation, even after the marriage was dissolved.  Id. ¶ 21.

In April 2012, Tiffany offered a handyman $5,000 to kill Mr. Stevens.  Id. ¶ 23.  The handyman told Mr. Stevens of the offer, Mr. Stevens notified the police, and Tiffany was arrested and charged with attempted murder.  Id.  Notwithstanding the pendency of criminal charges, Tiffany retained custody of the couple's daughter and moved to New York State.  Id. ¶ 26.  Mr. Stevens has not seen his daughter in approximately four years and has not spoken with her in the last eighteen months.  Id. ¶ 30.

After he learned of Tiffany's efforts to have him killed, Mr. Stevens filed many motions in Connecticut's family courts.  See id. ¶ 37.  He filed these motions pro se because he had already exhausted his financial resources in the course of the previous litigation with Tiffany, id. ¶ 36, and because the State of Connecticut does not appoint counsel for indigent parties in family law proceedings, see id. ¶ 35.  Though he requested that counsel be appointed for him, the Superior Court denied Mr. Stevens's entreaties.  Id. ¶ 40.  Tiffany, on the other hand, retained experienced counsel and made her own motions.  Id. ¶ 38.

Mr. Stevens moved the court for custody of and visitation with his daughter, as well as for contempt orders against Tiffany and her attorney.  Id. ¶ 37.  However, the

---

allegations of the complaint or the complaint and exhibits attached to it"), because the State Defendants do so for the purposes of their Motion, Mem. of Law in Supp. of State Defs.' Mot. to Dismiss Am. Compl. (Doc. No. 67-1) at 3 n.1.  The facts included here are limited to those necessary to rule on the pending Motions.

Superior Court judge "failed, refused and neglected" to hold hearings and rule on his motions, though it responded to those filed by Tiffany.  Id. ¶ 39.

B.    Governor Malloy and Chief Justice Rogers

Both Governor Malloy and Chief Justice Rogers are aware of the consequential role in family law proceedings played by disparities between the parties' financial resources.  Id. ¶¶ 42, 45.  Chief Justice Rogers acquired this knowledge "as a result of broad public criticism by aggrieved litigants in the form of letters to court officers, testimony at legislative hearings, litigation in other cases, and commentary in local media."  Id. ¶ 42.  When she became Chief Justice, Chief Justice Rogers "made a priority of improving public confidence in the courts"; through those efforts, she became aware that pro se litigants frequently complained that they were denied an opportunity to be heard.  Id.  Chief Justice Rogers also is responsible for ensuring state court judges are appropriately trained.  Id. ¶ 50.  She is aware that trial court judges often "refuse[ ] to calendar for adjudication or otherwise ignore[ ]" motions filed by pro se litigants in family court.  Id. ¶ 49.

Similarly, Governor Malloy knows "of the controversial role of finances in family law cases as a result of the testimony at legislative hearings, commentary in local media, and reporting to him by senior staff who monitored [Chief Justice Rogers's] efforts to improve public confidence in the courts."  Id. ¶ 45.

Despite their knowledge of these problems, neither Governor Malloy nor Chief Justice Rogers made money from Executive Branch and Judicial Branch discretionary funds available to provide pro se litigants representation in family court proceedings. See id. ¶¶ 44, 47–48.

### III.    LEGAL STANDARD

Claims are properly dismissed "under [Federal Rule of Civil Procedure] 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." Cortland St. Recovery Corp. v. Hellas Telecomms., S.À.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (quotation marks and citations omitted).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." Carter v. Healthport Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). When ruling on a facial Rule 12(b)(1) motion—one that relies on the facts alleged in the Complaint—the court accepts as true the allegations in the Complaint and draws all reasonable inferences in favor of the plaintiff. Id. at 56–57. Nevertheless, the burden is on the plaintiff to "plausibly allege" facts that establish federal subject matter jurisdiction. Id. at 56 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). In other words, "[t]he task of the district court is to determine whether the [Complaint] allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." Id. (quotation marks omitted) (quoting Lujan, 504 U.S. at 561).

### IV.    DISCUSSION

Mr. Stevens grounds his damages claims against Governor Malloy, Chief Justice Rogers, and Officer Segar in section 1983 of title 42 of the United States Code. See Am. Compl. ¶¶ 2–3. He also asks for a declaratory judgment that various aspects of Connecticut's family court procedures violate his constitutional rights. Apart from these claims, Mr. Stevens brings state law claims against the other defendants, none of whom are state actors. See id. ¶ 2; Opposition at 2 (relying on Docket Number 33, "prior

6

memorandum in opposition to" non-state defendants' Motions to Dismiss); Nunc Pro Tunc Mem. in Opp'n to the Rabbani Defs.' Mot. to Dismiss (Doc. No. 66) at 2 (same); Pl.'s Mem. in Opp'n to the Defs.' Various Mots. to Dismiss (Doc. No. 33) at 2 (conceding that if court dismisses claims against State Defendants, "state law claims only" would remain).

For the reasons set forth below, the court holds that Mr. Stevens lacks standing to pursue either damages or declaratory relief from Governor Malloy and Chief Justice Rogers.  Mr. Stevens made clear during Oral Argument held on October 14, 2016 that, notwithstanding Officer Segar's inclusion in the Amended Complaint, he does not consider Officer Segar to be a party in this case.  See Oral Arg., Oct. 14, 2016, Tr. at 28.

After dismissing Mr. Stevens's claims against the State Defendants, only state law claims remain.  See Pl.'s Mem. in Opp'n to the Defs.' Various Mots. to Dismiss (Doc. No. 33) at 2.  The court declines to exercise supplemental jurisdiction over these claims, see 28 U.S.C. § 1367(c)(3), and therefore dismisses the Amended Complaint in its entirety.

A.  Rule 12(b)(1): Standing

Governor Malloy and Chief Justice Rogers offer several grounds for dismissal of the claims against them: lack of standing, 11th Amendment immunity, lack of the state defendants' personal involvement in the alleged constitutional violations, qualified immunity, and failure to state a claim.  See Mem. of Law in Supp. of State Defs.' Mot. to Dismiss Am. Compl. ("State Defendants' Memorandum" or "State Defs.' Mem.") (Doc. No. 67-1) at 1–2.  Mr. Stevens objects to the State Defendants' arguments.  Most

importantly for the purposes of this Ruling, he asserts that his "[c]laim [f]or [e]quitable [r]elief [i]s [n]ot [s]peculative" and that he has sufficiently alleged the direct involvement of Governor Malloy and Chief Justice Rogers so as to proceed to discovery.  Opposition at 3, 5.  As set forth below, the court again concludes that Mr. Stevens lacks standing to pursue his claims against Governor Malloy and Chief Justice Rogers.  He has failed to remedy the defects that led to the dismissal of the claims in his Original Complaint. Thus, Mr. Stevens's claims against Governor Malloy and Chief Justice Rogers are dismissed pursuant to Rule 12(b)(1).

The First Ruling set forth in great detail the law of standing, and the court incorporates that discussion here.  See generally First Ruling at 7–24.  To briefly recapitulate, the United State Constitution limits the jurisdiction of the federal courts to certain types of "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  To satisfy the "case-or-controversy requirement . . . plaintiffs must establish that they have standing to sue."  Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013) (internal quotation marks and citations omitted).  The "irreducibile constitutional minimum," Montesa v. Schwartz, --- F.3d ---, 2016 WL 4728000, at *4 (2d Cir. Sept. 12, 2016) (quoting Lujan, 504 U.S. at 560), of Article III standing consists of three elements: "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision," id. (quoting Susan B. Anthony List v. Driehaus, --- U.S. ---, 134 S. Ct. 2334, 2341 (2014)).

In its First Ruling, the court interpreted Mr. Stevens's Original Complaint to allege three different types of injuries:[7] first, "the loss of a relationship with his child"; second, violations of his constitutional rights stemming from the fact that he was not appointed counsel in the state divorce and custody proceedings; and last, violations of his constitutional rights stemming from Chief Justice Rogers's failure to adequately train the Superior Court judge presiding over his divorce and custody disputes.  See First Ruling at 8–9.  The court further noted that, although the second and third of these injuries overlap, to some extent, with the first, they are, "at least in theory, independently actionable."[8]  First Ruling at 9.

As noted above, Mr. Stevens made only minor revisions to his Original Complaint.  See Am. Compl. ¶¶ 36–37, 40, 42, 45.  These revisions add factual allegations as to Mr. Stevens's efforts to have counsel appointed in the state court proceedings, see Am. Compl. ¶¶ 36–37, 40, and as to the bases of Governor Malloy's and Chief Justice Rogers's knowledge about pro se litigants' difficulties in family court proceedings, see id. ¶¶ 42, 45.  The revisions do not, and Mr. Stevens's Opposition does not, call into question the court's characterization in the First Ruling of Mr. Stevens's

---

[7] Despite the court's note in the First Ruling that "Mr. Stevens's Complaint [was] somewhat unclear on the exact nature of the injuries for which he claims Governor Malloy and Chief Justice Rogers are liable," First Ruling at 8, Mr. Stevens has not clarified these matters in his Amended Complaint.  At Oral Argument, Mr. Stevens expressed general agreement with the court's characterization of the first two injuries—loss of a relationship with his daughter and lack of counsel in the state custody proceeding—but articulated the third injury as violation of his "right to be effectively heard."  See Oral Arg., Oct. 14, 2016, Tr. at 17–18.  The court appreciates Mr. Stevens's efforts to clarify and notes that the difference, if any, between characterizing Mr. Stevens's injury as a violation of his right to be heard or by reference to the state court judge's failure to timely adjudicate his motions is immaterial for the purposes of this Ruling: the failure to rule on Mr. Stevens's motions caused the relevant alleged constitutional injury.

[8] The court expanded on this possibility: "if Mr. Stevens proved that he was constitutionally entitled to court-appointed counsel in his state court custody proceedings, the deprivation of that injury could entitle him to damages regardless of whether his claim for his primary injury of deprivation of a relationship with his daughter was also successful."  First Ruling at 9.

9

three alleged injuries.  The court will therefore construe Mr. Stevens's Amended

Complaint as alleging the same three injuries as did his Original Complaint, and it will

evaluate his standing to assert claims related to each.

Moreover, as it did in the First Ruling, the court will organize its discussion by the

remedy Mr. Stevens requests, rather than by the injuries he alleges.  He must meet the

requirements for constitutional standing for each form of relief sought.[9]  DaimlerChrysler

Corp. v. Cuno, 547 U.S. 332, 352 (2006) (citing Friends of the Earth, Inc. v. Laidlaw

Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000)).  The court now turns to Mr.

Stevens's request for declaratory relief, and then to his request for damages.

1.      Declaratory Relief

Mr. Stevens requests "[d]eclaratory relief in the form of a ruling requiring that

Connecticut's failure to provide counsel to indigent family court litigants violates both the

First and Fourteenth Amendments" to the United States Constitution.  Am. Compl. at 14.

A declaratory judgment is a form of prospective relief, see Los Angeles Cty., Cal. v.

Humphries, 562 U.S. 29, 31 (2010), for which a plaintiff may not "rely on past injury to

satisfy the injury requirement but must show a likelihood that he or she will be injured in

the future," Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998).

In its First Ruling, the court recounted the facts and holding of City of Los

Angeles v. Lyons, 461 U.S. 95 (1983), in detail.  First Ruling at 11–13.  There, the

Supreme Court had before it a case in which the plaintiff coupled a past injury with a

---

[9] Notably, Mr. Stevens has removed his demand for injunctive relief from the Amended
Complaint.  Compare Original Complaint at 14 (demanding equitable relief in the form of "[d]eclaratory
relief" and "[i]njunctive relief"), with Am. Compl. at 14 (demanding equitable relief only in the form of
"[d]eclaratory relief").

demand for prospective, declaratory and injunctive relief.  See Lyons, 461 U.S. at 97.
The Court decided that the possibility that Lyons would suffer the same injury—being
placed in a chokehold—in the future was "speculat[ive]," id. at 108, and concluded that
"Lyons'[s] assertion that he may again be subject to an illegal chokehold does not
create the actual controversy that must exist for a declaratory judgment to be entered,"
id. at 104.

   Similarly, Mr. Stevens asserts that he "has suffered, and will continue to
suffer . . . the loss of any relationship with his daughter . . . and the infringement of the
constitutional rights" described in the Amended Complaint.  See Am. Compl. ¶ 55.  As is
made clear in Lyons, Mr. Stevens is not entitled to declaratory relief based on any
injuries he "has suffered" in the past.  See Lyons, 461 U.S. at 113.  Nor is Mr. Stevens
entitled to declaratory relief based on a future loss of relationship with his daughter,
absent some renewed violation of his constitutional rights by the state actors.  At base,
Mr. Stevens's contention that "[t]here is nothing speculative about the harm alleged
here," Opposition at 5, misconceives the nature of the court's standing inquiry vis-à-vis
the requested prospective relief: the question is not whether Mr. Stevens still feels the
effects of a past constitutional violation, but rather whether he is likely to suffer a similar
injury—a similar violation of his constitutional rights—in the future.  See Lyons, 461 U.S.
at 105–06 (noting plaintiff was required to allege, in addition to unconstitutional policy or
regular practice, that "he would have another encounter with the police").

As Mr. Stevens now apparently concedes in his Opposition, <u>see</u> Opposition at 4–5,[10] the custody proceedings have been transferred to New York State, <u>see</u> <u>Stevens v. Stevens</u>, No. FA094044372S, 2015 WL 4173563, at *4 (Conn. Super. Ct. June 17, 2015).  Any further damage to his relationship with his daughter would therefore necessarily be the result of the alleged past constitutional violation.  Relatedly, any claim that he will suffer future injury—in the form of violations of his constitutional rights—is entirely speculative, in the absence of any contention that Mr. Stevens has or will have other child custody proceedings in Connecticut.  <u>See</u> <u>Clapper</u>, 133 S. Ct. at 1147 ("'[A]llegations of <u>possible</u> future injury' are not sufficient."  (quoting <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 158 (1990)).

Just as Mr. Stevens's request for declaratory relief fails as to the injury prong of the standing inquiry, so too does it fall short on redressability grounds.  Declaratory relief, prospective in nature, could not possibly redress a past constitutional violation; rather, as discussed <u>infra</u>, money damages are the proper remedy for past violations of Mr. Stevens's constitutional rights.  As for possible future injuries, the child custody proceedings over Mr. Stevens's daughter have been transferred to New York State.  <u>Id.</u> Mr. Stevens has not alleged that he is or will soon become embroiled in child custody proceedings in Connecticut.  It therefore stands to reason that a declaratory judgment regarding appointment of counsel for indigent Connecticut Family Court litigants or one regarding alleged failures of Connecticut judges to rule on pro se litigants' motions

---

[10] Despite the court's discussion of the Connecticut state court's transfer of the custody proceedings to New York and the concession in his Opposition, Mr. Stevens continues to assert in his Amended Complaint that Tiffany "is now attempting to have the post-judgment family proceedings transferred to New York State."  Am. Compl. at 8.

would be an impermissible advisory opinion.  Cf. Coffman v. Breeze Corps., 323 U.S. 316, 324 (1945) (cautioning, in somewhat different context, that "declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen").

Apparently recognizing this deficiency in his Amended Complaint, Mr. Stevens's Opposition posits that, because "state courts will have jurisdiction over [custody] disputes" as long as his daughter is a minor, "[a] declaratory ruling in this very case may well be of material assistance in getting the case transferred back to Connecticut on equitable grounds."  See Opposition at 4 (emphasis added).  He further theorizes that the New York court "may well return the matter to Connecticut" if this court rendered a declaratory judgment that Connecticut's practices are unconstitutional.  See id. at 5 (emphasis added).  The emphasized text in the previous two quotes makes clear that even Mr. Stevens realizes the extent to which the possibility that the New York court would transfer the custody case back to Connecticut, following a declaratory judgment from this court, is at best uncertain.  The mere possibility that a state court in another state might act a certain way is insufficient to permit this federal court to render a declaratory judgment favorable to Mr. Stevens.[11]

Because he has not pled facts that "affirmatively and plausibly suggest" that he will suffer a future injury or that a declaratory judgment would redress any past or future injuries, Mr. Stevens does not have standing to pursue declaratory relief.  See Carter, 822 F.3d at 56.

---

[11] The court notes that the portions of Mr. Stevens's Opposition most directly addressing his standing to demand declaratory relief include not a single citation to any case law or to any statute.  See generally Opposition at 2–5.

2.      Damages

The court next turns to Mr. Stevens's request for monetary relief from Governor Malloy and Chief Justice Rogers.  As noted above, the court construes Mr. Stevens's Amended Complaint as alleging three injuries: (1) loss of a relationship with his daughter; (2) deprivation of court-appointed counsel in his divorce and custody case; and (3) deprivation of prompt and fair consideration of his pro se motions in that case. See supra at 10–11; First Ruling at 14.  The court next considers whether Mr. Stevens has adequately pled a cognizable injury, causation, and redressability for each of the alleged injuries.  It also remains mindful that, in ruling on a Motion to Dismiss pursuant to Rule 12(b)(1), the court must "take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). Nonetheless, the party invoking federal jurisdiction has the burden of establishing it. See Susan B. Anthony List, 134 S. Ct. at 2342.

a.      Loss of Relationship

As he did in his Original Complaint, Mr. Stevens claims that, "[a]s a direct and proximate result of the acts and omissions herein, the plaintiff has suffered, and will continue to suffer . . . the loss of any relationship with his daughter."  Am. Compl. ¶ 55. He asserts that the right to a relationship with his daughter stems from First Amendment protection of rights of familial association and Ninth Amendment protection of his "fundamental right to parent his child."  Id. ¶ 2.  The court must determine if the infringement of these rights is (1) a cognizable injury-in-fact, (2) "fairly traceable to the challenged action" by these defendants, and (3) "redressable by a favorable ruling," in

14

order for Mr. Stevens to have standing.  See Clapper, 133 S. Ct. at 1147 (quoting

Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010)).

In its First Ruling, the court decided that the portions of Mr. Stevens's Original

Complaint related to his alleged lost relationship with his daughter "articulate[d] a

potentially cognizable injury-in-fact that could be redressed by a favorable Ruling."  First

Ruling at 15.  However, Mr. Stevens's assertion that he had standing ultimately fell short

because the court concluded that the alleged injury was not "fairly traceable to the

defendant[s'] allegedly unlawful conduct."  Id. at 16–17 (quoting Allen v. Wright, 468

U.S. 737, 751 (1984), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control

Components, Inc., 134 S. Ct. 1377 (2014)).

Mr. Stevens's minor revisions in his Amended Complaint do not alter the court's

conclusion that he satisfies the injury and redressability requirements for standing

purposes.  See First Ruling at 15–16.  However, Mr. Stevens has not cured the defect in

his Original Complaint, namely that he has not affirmatively and plausibly suggested a

sufficient causal link between the loss of his relationship with his daughter and the

challenged conduct by Governor Malloy and Chief Justice Rogers.

Mr. Stevens renews his claims under a theory of deliberate indifference, alleging

that both Governor Malloy and Chief Justice Rogers are aware of, and do nothing to

remedy, financial disparities between parties opposing one another in family court.  See

Am. Compl. ¶¶ 42–43, 45–46.  He also claims that Chief Justice Rogers "is deliberately

indifferent in her failure to train judges on their responsibility to adjudicate all motions

filed in the Superior Court in a prompt and timely manner, including motions filed by pro

se litigants."  Id. ¶ 53.  In response to the State Defendants' suggestion that he has

again failed to include sufficient allegations as to the causal link between the challenged actions and Mr. Stevens's relationship with his daughter, State Defs.' Mem. at 10–12, Mr. Stevens suggests that "[t]he defendants take a crabbed view of causation" and that "[d]iscovery is necessary to test the theory asserted in the amended complaint," Opposition at 5.

The court does not agree.  Taking all Mr. Stevens's allegations as true, and drawing all reasonable inferences in his favor, see Carter v. Healthport Techs.,LLC, 822 F.3d 47, 56 (2d Cir. 2016), the court cannot conclude that the allegations in the Amended Complaint are sufficient to support standing.  Mr. Stevens's additions in his Amended Complaint are insufficient to affirmatively and plausibly suggest the loss of his relationship with his daughter was caused by the actions and inactions of Governor Malloy and Chief Justice Rogers, even assuming arguendo that a deliberate indifference theory of state action and liability would be available here.  See First Ruling at 17.  As such, his claim must be dismissed for lack of standing.

Mr. Stevens has revised his Complaint, so as to add further allegations regarding his efforts to have counsel appointed in the state court proceedings, see Am. Compl. ¶¶ 36–37, 40, and regarding Governor Malloy's and Chief Justice Rogers's awareness of the difficulties pro se litigants face in family court proceedings, see id. ¶¶ 42, 45. Neither one of these categories of additions corrects the problems with these claims in the Original Complaint, discussed in the First Ruling.

In Allen v. Wright, 468 U.S. 737 (1984), the Supreme Court acknowledged that plaintiffs had suffered a judicially cognizable injury, 468 U.S. at 756, but held that "even if the relief [plaintiffs] request[ed] might have a substantial effect" on remedying the

16

alleged injury, the injury "might not be traceable" to the alleged unlawful conduct, 468 U.S. at 753 n.19.  That is to say, even when a cognizable injury might be redressed by certain judicial relief, a plaintiff does not have standing when the injury is not "fairly traceable" to the challenged conduct.

It is here that Mr. Stevens's claim falls short.  He continues to allege that the divorce and custody proceedings were "resolved by agreement and a judgment of dissolution of the marriage entered after an uncontested hearing on September 6, 2011," part of which "gave full custody of [Mr. Stevens's daughter] to Tiffany Khalily, although the plaintiff was permitted visitation with [his daughter]."  Am. Compl. ¶ 20. Nonetheless, Mr. Stevens asserts that he "has not seen his daughter in almost four years, and has not been permitted to speak to her for almost 18 months." Id. ¶ 30.  Yet Mr. Stevens makes clear his belief that it was his ex-wife and her family that "were determined to prevent the plaintiff from having a relationship with his daughter."  See id. ¶ 22.  Indeed, any actions, or failure to act, by Governor Malloy or Chief Justice Rogers with regard to Mr. Stevens's failure or inability to exercise his visitation rights—even if the lack of visitation has in fact ruined Mr. Stevens's relationship with his daughter—are too far removed from the injury.  Because Mr. Stevens's lack of a relationship with his daughter is fairly traceable only to the actions Tiffany and her family, rather than to those of Governor Malloy or Chief Justice Rogers, he does not have standing to seek relief from the State Defendants as to this injury. See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976) ("In other words, the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced

to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").

           b.       Failure to Allocate Funds for Court-Appointed Counsel

The court now turns to Mr. Stevens's contention that he was unconstitutionally deprived of counsel, as a result of Governor Malloy's and Chief Justice Rogers's failure to make available for that purpose Executive and Judicial Branch discretionary funds. Though related to the claim discussed above—that the alleged unconstitutional actions by Governor Malloy and Chief Justice Rogers resulted in Mr. Stevens's lack of a relationship with his daughter—this freestanding constitutional claim is distinguishable. See supra at 11 n.9.

As it did in the First Ruling, the court declines to pass judgment on the merits of Mr. Stevens's argument that the United States Constitution gives him a right to court-appointed counsel in custody proceedings. See First Ruling at 22 & n.12 (expressing skepticism that Mr. Stevens would succeed on merits of such claim, but not deciding the issue). The court also notes that an award of money damages would redress Mr. Stevens's constitutional injury. See 42 U.S.C. § 1983; cf. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971) (describing damages award as "a particular remedial mechanism normally available in the federal courts"). However, Mr. Stevens has failed to plead facts that "affirmatively and plausibly suggest" a causal link between the conduct of Governor Malloy and Chief Justice Rogers and Mr. Stevens's lack of a court-appointed lawyer. See Carter, 822 F.3d at 56.

Admittedly, to show that an injury is "fairly traceable" to the actions of a defendant, a plaintiff's burden is "relatively modest" at the pleading stage and "a lesser

burden than . . . show[ing] proximate cause."  See Rothstein v. UBS AG, 708 F.3d 82,

92 (2d Cir. 2013) (internal quotation marks and citations omitted).  However, Mr.

Stevens has not shouldered even this minimal burden.  Mr. Stevens adds several

factual allegations in his Amended Complaint, claiming that he asked for, and was

denied, court-appointed counsel.  See Am. Compl. ¶¶ 36–37, 40.  His failure to plead

such allegations in his Original Complaint was one of the grounds on which the court

based its decision to dismiss this claim in the Original Complaint.  See First Ruling at 23

(remarking that "Mr. Stevens [did] not allege that he asked for a lawyer in his state

custody case").

However, it was not the only basis for the court's decision.  The court also noted

that Mr. Stevens failed to allege that, when he asked for a lawyer, he "was denied one

specifically because the state court lacked the funds to appoint counsel to represent"

him.  Id.  Governor Malloy and Chief Justice Rogers appropriately point to this gap in

the new allegations in Mr. Stevens's Amended Complaint.  See State Defs.' Mem. at

12–13.  Mr. Stevens responds that his claims that discretionary funds in the "judicial and

executive branches [ ] could have been used to retain the counsel he requested" are

"sufficient to permit discovery as to funding for court-appointed counsel."  Opposition

at 7.

The court is unpersuaded.  Mr. Stevens's suggestion that, had Governor Malloy

or Chief Justice Rogers provided funding for court-appointed counsel in custody

proceedings, he would have received such counsel remains "little more than the remote

possibility, unsubstantiated by allegations of fact, that [his] situation might have been

better had (defendants) acted otherwise, and might improve were the court to afford

relief."  See Simon, 426 U.S. at 44 (quoting Warth v. Seldin, 422 U.S. 490, 507 (1975)).

Absent any allegations whatsoever as to the grounds for the state court's denial of his

requests for counsel—e.g., whether the state judge denied the request even in part

because of a lack of funds—Mr. Stevens's damages claim for failure to fund court-

appointed counsel falls short.  Therefore, this claim is dismissed pursuant to Rule

12(b)(1).

c.    Failure to Adjudicate Pro Se Motions

Finally, the court addresses Mr. Stevens's contentions that he was injured by

Chief Justice Rogers's "deliberate indifferen[ce] in her failure to train judges on their

responsibility to adjudicate all motions filed in the Superior Court in a prompt and timely

manner, including motions filed by pro se litigants."  Am. Compl. ¶ 53.  The court again

assumes arguendo that Mr. Stevens's claims in this regard would state a cognizable

injury-in-fact that would be redressed by a favorable ruling.  First Ruling at 21.  Yet even

giving Mr. Stevens this benefit, drawing all inferences in his favor, he has failed to allege

facts that affirmatively and plausibly suggest that the injury suffered is "fairly traceable"

to Chief Justice Rogers's action or inaction, and so does not have standing to bring this

claim.

Mr. Stevens's Amended Complaint suggests that his theory of causation remains

grounded in Chief Justice Rogers's "failure to train judges on their responsibility to

adjudicate all motions filed in the Superior Court in a prompt and timely manner,

including motions filed by pro se litigants."  Am. Compl. ¶ 53.  In its First Ruling, the

court dismissed this claim because Mr. Stevens "failed to plead facts that allege[d] how

Chief Justice Rogers's alleged failure generally to train state court judges directly

resulted in a <u>particular</u> state court judge depriving Mr. Stevens of his constitutional rights by failing to timely adjudicate [his] motions . . . ."  First Ruling at 21–22 (emphasis added).  Mr. Stevens fails to cure this defect in his Amended Complaint.  As noted above, the Amended Complaint contains some additional allegations about Chief Justice Rogers's knowledge of the difficulties encountered by pro se litigants in family court.  <u>See</u> Am. Compl. ¶ 42.  In the same vein, Mr. Stevens "urges the [c]ourt to permit discovery to show the extent to which the state's family courts are overwhelmed by pro se post-judgment claims in custody cases; the judiciay's [sic] inability to handle these cases; the chief justice's awareness of this inability; and, the chief justice's failure to offer training to the judges and staff of the courts to assure that pro se claims are heard in a meaningful manner."  Opposition at 6.  This request misses a crucial point the court made in its initial Ruling: Mr. Stevens has again alleged no basis to infer that Chief Justice Rogers's alleged failure to train Connecticut's state judges resulted in the judge in his case failing or refusing to rule on his motions.  In the absence of any such allegations, Mr. Stevens has not pled facts that affirmatively and plausibly suggest that he has standing to sue.[12]  Thus, his failure to train claim must be dismissed as well.

---

[12] Mr. Stevens's Opposition is full of colorful turns of phrase.  In the section of the Opposition disputing Chief Justice Rogers's suggestion that he does not have standing to bring his failure to train claim, he writes the following: "More interesting, and meaningful, and required, based on the pleadings, would be for counsel to explain how a woman awaiting trial for allegedly plotting to kill her ex-husband ended up with custody of the couple's minor child while the plaintiff pleaded with a deaf court for relief."  Opposition at 7.  While such language makes for interesting reading, this and other, similar passages contain little or no legal argumentation.  In the future, citations to legal authority and responsiveness to points raised in this court's earlier rulings would be more helpful to the court.

B.  Rule 4(m): Service of Process

In the First Ruling, the court dismissed without prejudice Mr. Stevens's claims against Officer Segar, pursuant to Federal Rule of Civil Procedure 4(m).  See First Ruling at 26–27.  The court gave Mr. Stevens leave to replead, id. at 28, and he filed an Amended Complaint on June 28, 2016, Am. Compl. at 1.  Just as he did in the Original Complaint, Mr. Stevens listed Officer Segar as a defendant, Am. Compl. ¶ 12, and alleged that Officer Segar "failed, refused and neglected to arrest Tiffany Stevens despite having probable cause to believe she had violated a court order . . . [thus] den[ying] the plaintiff equal protection of the law," id. ¶ 54.  Mr. Stevens wrote in his Opposition that "each of the remaining defendants has now filed motions to dismiss the action," despite the fact that Officer Segar has neither been served nor appeared in this case.  See Opposition at 1.

During Oral Argument, Mr. Stevens asserted that he does not consider Officer Segar to be a party to this case, notwithstanding the allegations in his Amended Complaint.  See Oral Arg., Oct. 14, 2016, Tr. at 28.

Therefore, the court need not address the Amended Complaint's claims against Officer Segar.

C.  Supplemental Jurisdiction

Having dismissed the claims against Governor Malloy and Chief Justice Rogers, only state law claims remain.  Opposition at 2 (relying on Docket Number 33, "prior memorandum in opposition to" non-state defendants' Motions to Dismiss); Nunc Pro Tunc Mem. in Opp'n to the Rabbani Defs.' Mot. to Dismiss (Doc. No. 66) at 2 (same); Pl.'s Mem. in Opp'n to the Defs.' Various Mots. to Dismiss (Doc. No. 33) at 2 (conceding

that if court dismisses claims against State Defendants, "state law claims only" would remain).  Section 1367 of title 28 of the United States Code allows district courts to decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

Indeed, the Second Circuit has repeatedly said that, "if a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.'"  Brzak v. United Nations, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008)).  Prior decisions in this District have heeded this exhortation, see, e.g., Bellamy v. Gen. Dynamics Corp., No. 3:10cv1219 (MRK), 2012 WL 1987171, at *7 (D. Conn. June 4, 2012); Kelly v. Signet Star Re, LLC, 971 F. Supp. 2d 237, 254 (D. Conn. 2013).  So too does the court here.  Therefore, the court declines to exercise jurisdiction over the remaining claims, against each of the remaining non-state defendants.

## V.    CONCLUSION

For the reasons set forth above, the Motion to Dismiss (Doc. No. 67) filed by defendants Dannel Malloy and Chase Rogers is **GRANTED**.  Mr. Stevens's claims against Governor Malloy and Chief Justice Rogers are dismissed for lack of standing pursuant to Rule 12(b)(1).  His claims against Officer Segar need not be considered, as Mr. Stevens has made clear he no long considers Officer Segar to be a party to this case.  In light of these rulings, no federal claims remain in Mr. Stevens's Amended Complaint.

Because the court declines to exercise supplemental jurisdiction over the remaining state law claims, see 28 U.S.C. § 1367(c)(3), these claims are dismissed

without prejudice and the remaining Motions to Dismiss (Doc. Nos. 63, 65, 68) are

**TERMINATED AS MOOT**.

Having already given Mr. Stevens one opportunity to remedy the defects in his

Original Complaint, the court declines to do so again.  Therefore, the Clerk is directed to

close this case.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 28th day of October, 2016.


___/s/ Janet C. Hall____ _____
Janet C. Hall
United States District Judge